IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SUSAN MITCHELL & ROYCE MITCHELL | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-10-223 |
| | § | |
| CITY OF SUGAR LAND, ET AL. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendants' "Motion for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)" (Docket Entry ("Dkt.") No. 26), which the Court, in open court and with full notice to both parties, converted to a Motion for Summary Judgment. The Court provided Plaintiffs with ample time to respond to the Motion. Plaintiffs filed a response opposing the Motion. (Dkt. No. 31). Defendants then filed a Reply. (Dkt. No. 33). Having considered Plaintiffs' complaint, Defendants' Motion, the Response and Reply, the numerous exhibits submitted and the applicable law, the Court concludes that Defendants' Motion should be granted for all the reasons discussed herein.

## I. BACKGROUND

On March 1, 2009, Plaintiff Susan Mitchell was pulled over in her vehicle by Sugar Land police officers Longtin and Boykin because she had paper license plate on her vehicle and the officers could not see the name of the state that issued the tags. Upon investigation, the officers discovered, and Susan Mitchell does not dispute, that the plates on the vehicle were "homemade." It seems that the Mitchells have "chosen" not to comply with Texas law which requires individuals to register their vehicles in Texas. (Dkt. No. 1 [Plaintiffs' Complaint] at 18). The stop, which lasted approximately 20 minutes, resulted in Susan Mitchell receiving a traffic citation for "no

motor vehicle registration." The citation directed Susan Mitchell to appear before the Sugar Land Municipal Court Judge on March 26, 2009, to answer the charge.

The day after receiving the citation, Susan Mitchell filed a written complaint with the Sugar Land police department complaining that the officers sexually harassed her. In her complaint, Mitchell explained that she reached this conclusion because the officers "crossed three lanes of traffic, out of their jurisdiction, just to stop Susan" and because "there was no other apparent reason for the arrest." (Dkt. No. 1 at 7-8). She contends, however, that Sugar Land Police Chief Griffith made "no reasonable investigation of Susan's complaint" and "dismissed [her] complaint summarily." (*Id.* at 8). She then sent a letter to Sugar Land City Manager Bogard and reiterated her complaints concerning the traffic stop. (*Id.*). When he did not respond to her complaint, Mitchell postulated that "Bogard refused to respond to [her] because he is prejudiced against women." (*Id.* at 9).

Although Susan Mitchell was instructed to appear before the municipal court judge on March 26, 2009, to answer the charge that was set forth in the traffic citation, it seems she failed do so. Instead of appearing, Mitchell filed a motion to dismiss for want of subject matter jurisdiction. (Dkt. No. 31, Ex. F). In the motion, Mitchell argued that because the police officers were not within the bounds of the City of Sugar Land when they pulled her over and gave her the ticket,[1] the court had no jurisdiction over her. (*Id.*). Municipal Court Judge Landin denied her motion to dismiss and, thereafter, issued a capias warrant for her arrest because she had failed to appear. (*Id.*, Ex. G). Mitchell then filed an interlocutory appeal of the Judge's determination and

---

[1] Plaintiff Susan Mitchell concedes, however, that she was driving in Sugar Land when her vehicle captured the attention of the police officers. (Dkt. No. 31, Ex. K).

she also requested "an emergency stay and temporary restraining order against [Judge] Landin." (Dkt. No. 1 [Plaintiffs' Complaint] at 12).

Officers Guthery and Seymour are both with the Sugar Land Police Department.  The arrest warrant that Judge Landin issued was given to them and they made numerous attempts to execute the warrant for Susan Mitchell's arrest by sending notices of the arrest warrant to different addresses with presumed connections to Mitchell.  (Dkt. No. 1 at 14-15; Dkt. No. 31, Ex. R). Susan Mitchell claims that the notice, which she maintains should have been kept private, was sent to family members and the fact that they learned that there was a warrant for her arrest "caused [her] humiliation and embarrassment …" (Dkt. No. 1 at 39-41).  Officers Seymour and Guthery then attempted to serve  the arrest warrant in person.  (Dkt. No. 31, Ex. R).  When they arrived at an address where they believed Susan Mitchell was located in an attempt to serve the warrant, they found other vehicles in the driveway area that also had paper "homemade" licence plate tags which were similar to what was previously found on Susan Mitchell's vehicle.  The officers removed the tags from the vehicles.  (Dkt. No. 1 at 17).

On a different occasion, officers observed "homemade" license plate tags on a vehicle driven by Plaintiff Royce Mitchell as he pulled into his drive-way.  (Dkt. No. 31, Ex. R).  Mr. Mitchell, who represented himself to officers as an attorney, was detained while officers investigated the tags on his vehicle.  (*Id.*).  As was the case with Susan Mitchell, Mr. Mitchell admitted that the tags were "homemade."  Nonetheless, Royce Mitchell claims that his detention was unwarranted and, since he had just gotten out of the hospital, the incident upset him greatly and he had to return for treatment. (*Id.*).  This incident forms the basis of Mr. Mitchell's suit.

Plaintiffs, Susan and Royce Mitchell, acting *pro se*, filed suit in state court against several defendants including the City of Sugar Land, Texas, Steve Griffith (Sugar Land's Police Chief), Kevin Longtin (arresting police officer), Daniel Boykin (arresting police officer), D. Craig Landin (Sugar Land Municipal Court Judge), Kerry Guthery (police officer), W.P. Seymour (police officer) and Allen Bogard (Sugar Land's City Manager). Defendants removed the action from state to federal court based on federal question jurisdiction. In their Complaint, Plaintiffs assert numerous claims against Defendants. First, bringing their claims under 42 U.S.C. § 1983, Plaintiffs claim they were arrested, subjected to unlawful search and seizure and denied due process. Second, Plaintiffs allege that Defendants engaged in a conspiracy against them under 42 U.S.C. § 1985(3). Third, Plaintiffs assert a multitude of state law claims which include false arrest, false imprisonment, intentional infliction of emotional distress, numerous counts of trespass, public disclosure of private facts, official oppression/sexual harassment, civil conspiracy, abuse of process, intentional infliction of emotional distress, abuse of process, and negligence in hiring, supervising and training.

## II.  STANDARD OF REVIEW

At the summary judgment phase, while a court must view the facts in a light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmovant, *Scott v. Harris*, 550 U.S. 372, 380 (2007), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

Under Rule 56(c), the moving party bears the initial burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also, Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party meets its initial burden under Rule 56(c), the burden then shifts to the nonmovant to show a genuine issue of material fact exists that precludes summary judgment. "[T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also, Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("[t]o avoid summary judgment, the nonmoving party must adduce evidence which creates a fact issue."). "[A] nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions." *Mace v. City of Palestine*, 333 F.3d 621, 624 n. 7 (5th Cir. 2003); *see also, Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) ("the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994)

5

("only evidence–not argument, not facts in the complaint–will satisfy the burden."). Nor can the nonmovant overcome summary judgment by showing "some metaphysical doubt as to the material facts" in an attempt to create a genuine dispute. *Matsushita*, 475 U.S. at 584-86.

## III. DISCUSSION

### A. Federal Law Claims

Plaintiffs allege a number of different causes of action against Defendants based on federal law. Defendants maintain, for various reasons, that each of Plaintiffs federal claims must be dismissed. The Court will address each claim in turn.

### 1. Claims Against Individual Defendants in their Official Capacity

It is unclear from Plaintiffs' Complaint whether they have brought suit against the individually-named Defendants in their official capacity; however, to the extent that they may have, Defendants seek dismissal of the claims against each of the individual Defendants in their official capacity. (Dkt. No. 27 at 6).

It is well established that a lawsuit against a government official in his official capacity is not a lawsuit against the individual but, rather, is a suit against the official's office and is no different than a suit against the governmental unit which employs the official. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Because the City is already a defendant in this case, any suit against the Defendants in their official capacity is duplicative and must be dismissed. Accordingly, the Court grants Defendants' motion on this point.

### 2. <u>Claims Brought Under 42 U.S.C. § 1983</u>

Plaintiffs have asserted claims against Defendants under 42 U.S.C. § 1983 for "illegal seizure," unlawful detention and false arrest.  They also complain of deprivation of their due process rights.[2]  Defendants maintain that they are entitled to summary judgment on these claims because Plaintiffs have failed to allege facts that show a violation of any Constitutionally protected right.  (Dkt. No. 27 at 7-17).  Defendants further maintain that Plaintiffs' allegations against Defendant Landin fail because he is entitled to absolute judicial immunity; and the other Defendants are entitled to qualified immunity.  (*Id.* at 18-26).

To establish liability under § 1983, a civil rights plaintiff must establish two elements: (1) state action, i.e., that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, i.e., that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *see also*, *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994)).

While a § 1983 claimant may not maintain an action against a state official in his official capacity, he may have a cause of action against a state official acting in his capacity as an individual.  *See Harrison v. Texas Dept. of Criminal Justice-Institutional Div.*, 915 S.W.2d 882,

---

[2] Plaintiffs do not specify the exact basis of these claims, however, since they are acting *pro se*, the Court will presume the allegations are based on a claim that their Fourth Amendment rights were violated and that their right to due process was denied in violation of their Fourteenth Amendment rights.

889 (Tex.App.–Houston [1st Dist.] 1995, no pet.).  However, when a § 1983 claim is alleged against a defendant in his individual capacity, it is subject to the affirmative defense of qualified immunity.  Under the doctrine of qualified immunity, an official sued in his individual capacity is protected not only from liability, but also from having to stand trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir.1993).  Further, in the context of summary judgment, once a defendant "invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

When determining whether a defendant is entitled to qualified immunity, the courts have historically engaged in a two-pronged analysis.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court would first have to determine whether a "constitutional right would have been violated on the facts alleged."  *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).  If a constitutional right were violated, a court would then have to move on to determine whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.*  The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  However, the Supreme Court recently receded from the *Saucier* by instructing courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

a.  Fourth Amendment Claims

Plaintiffs appear to allege that the Defendant officers violated their Fourth Amendment rights because no probable cause existed to stop, detain or arrest them.  (See Dkt. No. 1 [Plaintiffs' Complaint – Counts 3 & 5]).  Plaintiffs also allege that the Defendant officers only stopped Susan Mitchell so they could subject her to sexual harassment.

The Fourth Amendment bestows the constitutional right upon a person to be free from unreasonable seizures of both his person and effects.  *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  However, the law clearly provides that a law enforcement officer may lawfully stop and detain an individual to perform an investigation based on reasonable suspicion.  *Id.*;  *Goodson v. City of Corpus Christi*, 2002 F.3d 730, 736 (5th Cir. 2000).  The Constitution requires only a minimum level of objective justification, considering the totality of the circumstances, for an investigating officer's actions.  *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).  Justification for an investigative detention does not depend on whether the officer's suspicion that an offense may have been committed is ultimately proven to be confirmed or even whether the officer was more likely not correct in his suspicion.  *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).  Moreover, justification to detain a suspect for a suspected offense is a complete defense to an unlawful arrest under § 1983.  *See Pfannstiel v. City of Marion*, 918 F.2d 1179, 1183 (5th Cir. 1990).

In the present case, while Plaintiffs complain that officers unlawfully seized and detained them in violation of their Fourth Amendment rights, the undisputed evidence does not support their claims.  In fact, Plaintiffs' own admissions regarding the "homemade" license plates as well as the other documentary evidence they submitted, all lend support to the conclusion that the

9

officer's conduct was reasonable in terms of detaining and arresting Plaintiff Susan Mitchell and then later detaining Plaintiff Royce Mitchell on the same basis.

Plaintiffs also allege that they were illegally arrested.  Defendants argue that Plaintiffs' claim that they were illegally arrested has no basis.  The Court agrees.  The law permits an officer to make a warrantless arrest in a public place where the law enforcement officer has probable cause to believe that the suspect has committed, is committing, or is about to commit a crime." *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir.1995) (citing *Harper v. Harris County*, 21 F.3d 597, 601 (5th Cir.1994)).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  In the present case, even taking their allegations as true, Plaintiffs have unequivocally conceded they violated the Texas Transportation Code by driving unregistered vehicles.  Although Plaintiffs unjustifiably believed that they were entitled to "put whatever they like in that place, including a homemade tag", driving an unregistered and improperly plated vehicles is an offense, albeit minor, upon which probable cause existed to justify an arrest.

In summary, because the undisputed evidence before the Court does not support that there was a violation of Plaintiffs' Fourth Amendment rights, a necessary element of such a claim, their Fourth Amendment claims are without merit.  *Celotex*, 477 U.S. at 323 (A complete failure of proof of an essential element of the nonmovant's case renders all other facts immaterial; therefore, there can be no genuine issue of material fact).  Moreover, Plaintiffs have also failed to overcome their burden of demonstrating that Defendants, in their individual capacities, would not be entitled to qualified immunity.  The Court, therefore, concludes that Defendants are entitled to summary judgment on this claim.

b.  Fourteenth Amendment Due Process Claims

Plaintiffs allege that their procedural and substantive due process rights were violated by the municipal court judge when he refused to grant Susan Mitchell's request for an interlocutory appeal in her criminal case based on Texas' civil practice rules and also when the judge failed to forward her case to the next level court following her appeal.

The Due Process clause of the Fourteenth Amendment to the Constitution has a substantive component and a procedural component.  The substantive component offers protection to an individual only if that person is deprived a property or liberty interest by state action and the conduct was arbitrary and capricious.  *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Levitt v. Univ. Texas at El Paso*, 759 F.2d 1224, 1231 (5th Cir. 1985).  In contrast, the procedural component, which is based on the concept of fundamental fairness, refers to the procedures that the government must follow before it takes an action that could deprive a person of life, liberty, or property.  *See generally, Goldberg v. Kelly*, 397 U.S. 254 (1970).  Unlike its substantive counterpart, procedural due process limitations do not require that the government refrain from making a substantive decision to infringe upon a person's life, liberty, or property interest.  In other words, procedural due process merely requires that the governmental entity provide "due process" (*i.e.*, certain basic safeguards) before making such a decision.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *see e.g.*, *Mullhane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (notice of the charges or issue); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (the opportunity for a meaningful hearing); *Gibson v. Berryhill*, 411 U.S. 564 (1973) (an impartial decision maker).

11

Thus, the threshold question, regardless of whether the claim is substantive or procedural, is whether a constitutionally protected property interest exists. The plaintiff bears the initial burden of proof on this issue. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972); *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987). When discussing the scope of this issue, the United States Supreme Court has noted that property interests may take several forms; however, the Court has explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. In *Roth*, the Supreme Court explained that the Constitution does not create "property" interests, but rather that such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.* In other words, while the Constitution provides protection for property interests, the interests themselves are not created by the Constitution." *See Strother v. Columbia-Brazoria Indep. Sch. Dist.*, 839 F.Supp. 459, 461 (S.D.Tex.1993), *aff'd*, 32 F.3d 565 (5th Cir. 1994). Instead, the Court explained that, in order to exist, a property right must be found in a state statute, a local ordinance or rule, a written contract, or a mutually explicit understanding under state law of an implied contract. *Id.*

Defendants maintain that Plaintiffs' due process claims fail because they have failed to identify a protected property interest. Defendants are correct—Plaintiffs have not identified a protected property interest upon which to base their due process claims. To the extent that Plaintiffs attempt to base a protected property interest on the municipal court judge's refusal to apply civil rules and remedies in Susan Mitchell's criminal case, any such argument would be

12

specious because the municipal court judge correctly informed them that the civil rules of procedure had no application in a criminal matter, TEX. R. CIV. P. 2; *Ex parte Donaldson*, 86 S.W.3d 231, 233 (Tex.Crim.App. 2002), and that interlocutory appeals were not permissible in criminal matters. *Ex parte Smith*, 178 S.W.3d 797, 802 (Tex.Crim.App. 2005).

Nonetheless, even if Plaintiffs had identified such a interest or right, their complaints are based on the decisions made by Defendant Landin who, as a municipal court judge, is entitled to absolute judicial immunity. *Mirales v. Waco*, 502 U.S. 9, 9-10 (1991); *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 221-23 (5th Cir. 2009). Further, any argument that an exception to judicial immunity applied because the judge lacked jurisdiction to hear the matter has no basis.[3]

In conclusion, as with their Fourth Amendment claims, because Plaintiffs cannot establish their claims that their Fourteenth Amendment rights were violated and they have failed to overcome their burden of demonstrating that Defendants, in their individual capacities, are not entitled to qualified immunity these claims fail. The Court, therefore, concludes that Defendants are entitled to summary judgment on these claims.

### 3. Conspiracy Claim Under 42 U.S.C. § 1985

Plaintiffs allege that Defendants engaged in a conspiracy to deprive them of their rights. Defendants maintain this claim must be dismissed because Plaintiffs fail to adequately state facts to support a claim for conspiracy under 42 U.S.C. § 1985(3). (Dkt. No. 27 at 15-17). Insofar as Plaintiffs allege that Defendants conspired to violate their rights under 42 U.S.C. § 1985, the Court agrees dismissal is warranted. Initially, the law presumes that municipalities are incapable

---

[3] *Supra* note 1.

of entering into conspiracies. *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Thus, the City of Sugar Land, Texas, cannot be liable for an action brought pursuant to §1985.

Notwithstanding, the law also provides that to state a cognizable claim under §1985(3), a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy, whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States, and (5) the action of the conspirators is motivated by a racial animus." *Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir.1989); *see also*, *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). In the present case, Plaintiffs' complaint against the Defendants is entirely devoid of any factual allegations that there was a specific intent by Defendants to deprive them of their Constitutional rights, nor are there factual allegations from which one could conclude that any race-based conspiracy existed. A plaintiff asserting a § 1985 claim must plead the operative facts upon which his claim is based. *Holdines v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987). Moreover, a plaintiff must plead this claim with some specificity; conclusory or bald allegations are simply inadequate. *Id.*

Having carefully reviewed the pleadings and the evidence submitted in this case, the Court concludes that Plaintiffs have failed to plead facts sufficient to support a conspiracy claim. In particular, there is no class-based invidious discriminatory animus. Nor will Plaintiffs attempt to argue that Plaintiff Susan Mitchell was discriminated against because of her gender or sex suffice

14

under § 1985(3).   *Wong*, 881 F.2d at 202-03 (claim requires the conspirators be motivated by racial animus).   Therefore, this Court concludes that Defendants' Motion as to Plaintiffs' claims under § 1985(3) claims should be granted and the claim dismissed.[4]

### 4.  Claim Against City for Municipal Liability

Plaintiffs seek to hold the City of Sugar Land, Texas, a governmental unit or municipality, responsible for the actions of various city employees under a municipal liability theory. Defendants maintain that Plaintiffs' claims against the City warrant dismissal because Plaintiffs wholly fail to identify any unconstitutional City policy and also fail to allege that any such policy was the moving force which caused them to suffer a constitutional deprivation.  (Dkt. No. 27 at 14-15).

A § 1983 action against a municipality must be based upon a violation of federally-protected rights through implementation or execution of a policy or custom adopted by that body's officers.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995).  In order to assert a claim for municipal liability under § 1983, a plaintiff must establish proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of a constitutional right whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Significantly, however, municipalities cannot be liable for the constitutional torts of their employees based on theories of either *respondeat superior* or mere negligence or oversight, *Rhyne v. Henderson*

---

[4] Plaintiffs do not appear to have alleged a claim under § 1986, however, if they had, it would also fail because a §1986 claim requires an underlying § 1985 claim as its foundation.  *Irwin v. Veterans Administration*, 874 F.2d 1092, 1095 (5th Cir.), *aff'd*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1991)(§ 1985 conspiracy forms an integral part of a § 1986 claim).

*County*, 973 F.2d 386, 390-92 (5th Cir. 1992), unless it can be shown that those employees acted pursuant to an official policy or with approval. *Monell*, 436 U.S. at 663 n. 7.

Here, Plaintiffs make broad allegations against the City of Sugar Land, but, aside from their conclusory allegations, the Plaintiffs do little to factually detail the policy or custom they claim is involved and how the particular injury was incurred because of the execution of that policy. *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts."); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (reasoning that a § 1983 plaintiff "must identify the policy, connect the policy to the [governmental entity] itself, and show that the particular injury was incurred because of the execution of that policy"). On this basis, Defendants' Motion should be granted on this issue.

Nevertheless, even assuming arguendo that the Plaintiffs had established the existence of a policy or custom, the law provides that to be actionable, a plaintiff must also be able to offer evidence to prove that an official policy or custom of the municipality's final policy-maker was the "moving force" that caused the deprivation of a constitutional right. *Monell*, 436 U.S. at 692; *Bennet v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). In other words, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)). In the present case, based on Plaintiffs' allegations, at best, they are merely seeking to hold the City liable under a theory of *respondeat superior* or vicarious liability and this will not suffice. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *Monell*, 436 U.S. at

16

691; *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 452 (5th Cir. 1994).  Nor will the mere fact that a municipal policy allows for officer discretion be sufficient to establish liability under § 1983. *Holland v. City of Houston*, 41 F.Supp.2d 678, 709 (S.D. Tex. 1999); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.").  Since the Mitchells have failed to make a sufficient showing on essential elements with respect to which they have the burden of proof, summary judgment for Defendant the City of Sugar Land, Texas, is appropriate.  *See Celotex*, 477 U.S. at 322-23.

## B.  State Law Claims

Plaintiffs assert a multitude of state law claims against Defendants.  Defendants moves for dismissal of Plaintiffs' state law claims against the individual defendants based on the election of remedies provision of § 101.106(e) of the Texas Civil Practice and Remedies Code.  Further, as to Plaintiffs' claims against the City, Defendants seek the dismissal of all these claims because the City has not waived governmental immunity and none of the injuries that Plaintiffs allege fall within any statutory exception—in fact, many of the claims they assert are for intentional torts upon which no waiver can be based.  (Dkt. No. 27 at 26-34).

### 1.  Claims Against the Individual Defendants

Plaintiffs filed this suit against the City and several of its current and former employees. Defendants seek dismissal of all Plaintiffs' state law claims against the Defendants in their individual capacities under the Texas Tort Claims Act ("TTCA") based on the election of remedies provision set forth in the Texas Civil Practices and Remedies Code.  (Dkt. No. 27 at 27-28). Defendants contend that since Plaintiffs have elected to bring suit against the City, all the claims

against the individual defendants must be dismissed under § 101.106(e).  Despite the apparent

harshness of the application of this statute, especially in cases, like this one, brought by *pro se*

litigants, Defendants are correct in their position.  Accordingly, pursuant to §§ 101.106(a) and (e)

of the Texas Civil Practice and Remedies Code, all of Plaintiffs' state law claims against the

individual Defendants must be dismissed.[5]  *See Mission Consolidated Indep. School Dist. v.*

*Garcia*, 253 S.W.3d 653, 658-59 (Tex. 2008) (explaining that "under this chapter" has never been

interpreted "to encompass tort claims for which the Tort Claims Act waives immunity" and "all

tort theories alleged against a governmental unit . . . are assumed to be 'under [the Tort Claims

Act]'"); *see also, Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (acknowledging

that under Texas law the election of remedies provision applied and required dismissal of all

common law torts against the individual defendants).

### 2.   Claims Against Defendant City of Sugar Land, Texas

Turning to Plaintiffs' claims against the City, Defendants maintain that the claims must be

dismissed because the Court lacks subject matter jurisdiction over Plaintiffs' claims.  (Dkt. No.

27 at 29).

Under the doctrine of sovereign immunity, a governmental unit, such as the City of Sugar

Land, is not liable for the torts of its officers or agents in the absence of a constitutional or

statutory provision creating such liability.  *Dallas County Mental Health & Mental Retardation v.*

*Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); *State v. Terrell*, 588 S.W.2d 784, 785 (Tex. 1979).

---

[5] Section 101.106(e) provides "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  Tex. Civ. Prac. & Rem. Code §101.106(e) (Vernon 2005).

The TTCA creates a limited waiver of sovereign immunity.  TEX. CIV. PRAC. & REM. CODE §
101.021 (Vernon 2005).  In order for immunity to be waived under the TTCA, the claim must
arise under one of three specific areas of liability for which immunity is waived.  *Id.*; *Alvarado
v. City of Brownsville*, 865 S.W.2d 148, 155 (Tex.App.–Corpus Christi 1993), *rev'd on other
grounds*, 897 S.W.2d 750 (Tex. 1995).  The three specific areas of liability for which immunity
has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury
caused by a condition or use of tangible personal or real property; and (3) claims arising from
premises defects.  TEX. CIV. PRAC. & REM. CODE § 101.021 (Vernon 2005).  However, the
waiver of immunity does not extend to claims "arising out of assault, battery, false imprisonment,
or any other intentional tort."  TEX. CIV. PRAC. & REM. CODE § 101.057 (Vernon 2005).  The
Legislature has not created, statutorily or otherwise, any exception to the intentional tort exclusion.

There is no question that the City of Sugar Land, Texas, is an entity to which the doctrine
of governmental immunity is applicable.[6]  *See Gates v. City of Dallas*, 704 S.W.2d 737, 738-39
(Tex.1986) (a governmental function is one which is public in nature and performed by the
municipality "as the agent of the State in furtherance of general law for the interest of the public
at large.").  In addition, police matters, including police protections and control, fall within a
municipality's governmental function.  *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(1) (Vernon
2005).  Finally, while it is true that the TTCA contains exceptions to governmental immunity for
certain damage claims arising from its governmental functions, the waiver goes no further than

---

[6] The City is a governmental unit under the TTCA, TEX. CIV. PRAC. & REM. CODE § 101.001 *et
seq.*, and is, therefore, entitled to the protections of sovereign immunity.  TEX. CIV. PRAC. & REM. CODE
§ 101.001(3)(B).

what is specified in the Act.  TEX. CIV. PRAC. & REM. CODE § 101.021 (Vernon 2005).  Here,

having reviewed Plaintiffs' claims–most of which are for intentional torts–it is clear that they are

not the type of claims that involve a waiver of immunity under the TTCA.  TEX. CIV. PRAC. &

REM. CODE § 101.057 (Vernon 2005); *see generally*, *City of Waco v. Williams*, 209 S.W.3d 216,

222-23 (Tex.App.–Waco 2006, pet. denied) (finding that an allegation of excessive force equated

to an intentional tort); *City of Garland v. Rivera*, 146 S.W.3d 334, 338 (Tex.App.–Dallas 2004,

no pet.) (finding an plaintiff's excessive force claim was based on an intentional tort).  Because

the City is cloaked with governmental immunity, it is immune from all of Plaintiffs' state law

claims[7] and, as such, they must be dismissed based on lack of subject matter jurisdiction.  *Tex.*

*Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1997).

## C.  Official Oppression Claim

Plaintiffs allege a claim for official oppression.  Official oppression is a crime under the

Texas Penal Code and it is well-established that the Texas Penal Code does not create private civil

causes of action for Plaintiffs.  *See Arredondo v. Gulf Bend Center*, 2006 WL 3761787 at *2

(S.D. Tex. 2006); *see generally*, *Brown v. De La Cruz*, 156 S.W.3d 560, 567 n. 39 (Tex. 2004);

---

[7] Even to the extent that Plaintiffs attempted to characterize their claim in terms of negligent rather than intentional conduct, it would prove unavailing.  Texas courts have consistently held that claims based on factual allegations of intentional conduct cannot be masked as negligence claims simply to circumvent the intentional tort exclusion of the TTCA.  *Williams*, 209 S.W.3d at 222; *Harris County v. Cabazos*, 177 S.W.3d 105, 110-113 (Tex.App.–Houston [1st Dist.] 2005, no pet.); *Medrano v. City of Pearsall*, 989 S.W.2d 141, 144-45 (Tex.App.–San Antonio 1999, no pet.).  Furthermore, even to the extent alleged, negligent training and hiring are areas of liability that have not been waived by the TTCA.  *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580-81 (Tex. 2001) (a negligent training claim alleges the use of "information," which "is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities."); *University of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106-07 (Tex.App.–Houston [1st Dist.] 2005, no pet.) ("allegations of negligent supervision do not satisfy the limited waiver of immunity" contained within the TTCA).

*A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex.App.–Houston [1st Dist.] 2001, pet. denied).  The Court must, therefore, grant Defendants' Motion and dismiss this claim.

<u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, it is the **ORDER** of this Court that Defendants' Motion, which this Court after proper notice to the parties converted to a Motion for Summary Judgment (Doc. No. 26) is **GRANTED** and that Plaintiffs' action is **DISMISSED, in its entirety**.

**IT IS SO ORDERED.**

**DONE** at Galveston, Texas, this _____25th_____ day of March, 2011.

_____
John R. Froeschner
United States Magistrate Judge

21